# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                               Case No.: 8:17-cr-216-CEH-AEP

REBERTO ALZATE MARIN
_____/

## ORDER

This cause comes before the Court upon Defendant Reberto Alzate Marin's Amended Emergency Motion for Compassionate Release to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 103).[1] The Government has filed a response in opposition (Doc. 104). Alzate Marin also filed a reply (Doc. 105) and two memoranda (Docs. 106, 107). Having considered the Amended Motion and being fully advised in the premises, the Court will deny the Amended Motion.

## I. BACKGROUND

After Reberto Alzate Marin pleaded guilty, the Court adjudicated him guilty of one count of conspiracy to possess with the intent to distribute and to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a) & (b), and 21 U.S.C. §

---

[1] Alzate Marin initially moved for compassionate release on April 2, 2020. Doc. 101 at 1. On August 20, 2020, the Court directed the Government to respond to that motion. Doc. 102. Before the Government responded, Alzate Marin filed the Amended Emergency Motion. Accordingly, the Court will deny Alzate Marin's initial motion as moot.

906(b)(1)(B)(ii). Doc. 75 at 1. On September 28, 2017, the Court sentenced Alzate Marin to 135 months of imprisonment and five years of supervised release. *Id.* at 2–3.

A 57-year-old male, Alzate Marin is currently incarcerated at CI North Lake in Baldwin, Michigan. Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Nov. 4, 2021). His scheduled release date is November 26, 2026. *Id.*

In the Amended Motion,[2] Alzate Marin seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13. Doc. 103 at 1. He claims that his age group and chronic medical conditions place him at high risk of "developing a severe case of COVID-19." *Id.* He represents that he suffers from type 2 diabetes, high cholesterol, facial paralysis, facial nerve disorder, hyperlipidemia, blepharospasm, pterygium, Bell's palsy, hypothyroidism, tuberculin,[3] and high blood pressure. *Id.* at 2–4. He argues that these medical conditions qualify as "extraordinary and compelling reasons" for his release. *Id.* at 2.

Alzate Marin also contends that he is vulnerable to COVID-19 while incarcerated at CI North Lake because the facility is crowded, the showers are dirty, and all inmates breathe the same air. *Id.* at 3. The facility also supposedly "has the

---

[2] Although Alzate Marin labels the Amended Motion as an "emergency" motion, the Amended Motion does not warrant more immediate attention than any other compassionate release motion.

[3] "Tuberculin" is simply "[a] protein extracted from Mycobacterium tuberculosis that is used in a skin test to determine if a person has been exposed to tuberculosis." MedicineNet, *Medical Definition of Tuberculin*, https://www.medicinenet.com/tuberculin/definition.htm (last visited Nov. 4, 2021).

2

most COVID-19 [c]ases" of any privately managed BOP facility and lacks sufficient masks, soap, and hand sanitizer. *Id.* at 3, 11. According to Alzate Marin, three staff members and three inmates were infected with COVID-19 when he filed the Amended Motion and the only available doctor at CI North Lake was "out sick." *Id.* at 3. And he points out that other federal prisons have experienced COVID-19 cases, with some cases resulting in deaths. *Id.* at 2, 4. Finally, he asserts that the § 3553(a) factors weigh in his favor, he states that he plans to reside with his family in Colombia if the Court releases him, and he claims that he is nonviolent and has a good record. *Id.* at 12.

In support, he supplies documents under seal, including medical records and an August 11, 2020 denial letter for a request for a sentence reduction, which he labels "Warden Response." Doc. S-103-1 at 2–3, 13–37. The denial letter indicates receipt on August 10, 2020, and explains that Alzate Marin is in "chronic," but "stable," care.[4] *Id.* at 3. He seeks a sentence reduction to time-served or, alternatively, home confinement.[5] *Id.* at 12.

---

[4] As explained below, Alzate Marin provides the same letter, not under seal, with a subsequent memorandum. Doc. 106 at 21–22.

[5] Alzate Marin also asks the Court to appoint counsel to review his filings because he is indigent and proceeds *pro se*. Doc. 103 at 2. "No constitutional or statutory right to counsel exists for Section 3582 motions; the decision whether to appoint an attorney in a Section 3582 action is left to the court's discretion." *United States v. Tigner*, No. 1:07-CR-00504-SLB-GMB-1, 2021 WL 1383326, at *3 (N.D. Ala. Apr. 13, 2021) (citing *United States v. Webb*, 565 F. App'x 789, 795 (11th Cir. 2009)). Here, Alzate Marin "has effectively put forth the basic contours of his argument for compassionate release without assistance and his claims are not so complex as to require counsel." *Id.*

The Government responded to the initial motion, not the Amended Motion. *See* Doc. 104 at 2. Nonetheless, because Alzate Marin similarly argues in that motion that his age, medical conditions, and the conditions of incarceration at CI North Lake warrant relief under 18 U.S.C. § 3582(c)(1)(A), the Court considers the response. The Government first outlines generally the response of the Bureau of Prisons to COVID-19, including the BOP's creation of a group to develop policies in consultation with experts at the Centers for Disease Control. *Id.* at 2–7. Proceeding to exhaustion of administrative remedies, the Government argues that Alzate Marin did not exhaust his administrative remedies, as the initial motion lacked "any indication of administrative action." *Id.* at 7–8. Further, the Government contends that Alzate Marin has not demonstrated "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13. *Id.* at 10. The Government argues that neither potential COVID-19 exposure nor any of Marin's medical conditions qualify as an extraordinary and compelling reason. *Id.* at 10–13. Finally, the Government asserts that even if an extraordinary and compelling reason exists, the § 3553(a) factors weigh strongly against the requested reduction in sentence. *Id.* at 13–14.

In his reply, Alzate Marin reiterates that his age and medical conditions qualify as "extraordinary and compelling reasons" and that he is "in a high-risk group" for COVID-19. Doc. 105 at 2, 5–6. He also states that another prisoner at CI North Lake died from COVID-19. *Id.* at 4. He argues that the Government ignores the "Real-Record-Rate-of-People" who are vulnerable to COVID-19. *Id.* at 5. And he contends that the Court should find the administration exhaustion requirement "waived"

because requiring him to exhaust his administrative remedies would result in "undue prejudice." *Id.* at 6–7. In a subsequent memorandum, he provides some of the same medical records that accompany the Amended Motion, except with his notations on some of the records. Doc. 106 at 8–17. He also supplies the denial letter again. *Id.* at 21–22. And in his final memorandum, he emphasizes that the Court can determine "extraordinary and compelling" circumstances, he argues that the § 3553(a) factors weigh in his favor, and reiterates the supposedly dangerous COVID-19 conditions at CI North Lake. Doc. 107 at 2–3, 8.

## II. LEGAL STANDARDS

Under 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotation marks omitted). Limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended section 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release. The statute provides:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

> defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure;
>
> . . . .

18 U.S.C. § 3582(c)(1).

Accordingly, a court may reduce a sentence upon motion of a defendant, provided that: (A) the inmate has either exhausted his or her administrative appeal rights of the BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (B) the inmate has established "extraordinary and compelling reasons" for the requested sentence

reduction; and (C) the reduction is consistent with the Sentencing Commission's policy statements. *Id.* § 3582(c)(1)(A). Courts must consider the § 3553(a) factors, as applicable, as part of the analysis. *Id.*

The defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (providing that defendant bears the burden of establishing a reduction of sentence is warranted under § 3582(c) due to a retroactive guideline amendment); *United States v. Heromin*, No. 8:11-cr-550-VMC-SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *Hamilton* in the context of a § 3582(c) motion for compassionate release).

### III.  DISCUSSION

#### A.  Alzate Marin Exhausted His Administrative Remedies

Alzate Marin exhausted his administrative remedies. Under 18 U.S.C. § 3582(c)(1), a defendant must exhaust administrative remedies with the BOP prior to the filing of a motion for compassionate release. "Section 3582(c)(1)(A) unambiguously provides that a defendant may either move for compassionate release after the defendant has fully exhausted administrative remedies *or* 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Smith*, 482 F. Supp. 3d 1218, 1223 (M.D. Fla. 2020) (emphasis in original) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Here, Alzate Marin provides a letter, which he labels "Warden Response." Doc. S-103-1 at 2; *see also* Doc. 106 at 21–22. That letter indicates that his "Compassionate Release/Reduction in Sentence Request" was dated August 4, 2020, and received on

7

August 10, 2020. Doc. S-103-1 at 2; Doc. 106 at 21. The letter, which denies the request, is dated August 11, 2020. Alzate Marin also provides a copy of his August 4, 2020 request, in which he asked the warden to "reconsider[]" a motion for relief under § 3582(c)(i)(A). Doc. S-103-1 at 7.

Thus, because Alzate Marin shows that he filed a request for compassionate release with the warden and that the warden denied his request, he exhausted his administrative remedies.[6] The Government's argument that the Defendant did not attempt to exhaust his administrative remedies is unavailing. Thus, the Court will turn to Alzate Marin's arguments for the existence of "extraordinary and compelling reasons" warranting his requested reduction.

### B. Alzate Marin Does Not Establish Extraordinary and Compelling Reasons

Alzate Marin fails to demonstrate "extraordinary and compelling reasons" for his requested reduction. Alzate Marin bears the burden of establishing that compassionate release is warranted. *Hamilton*, 715 F.3d at 337. Section 3582(c)(1), as amended by the First Step Act, provides, in relevant part, that a court may modify a term of imprisonment once it has been imposed in any case where, upon a defendant's motion, after considering the factors set forth in § 3553(a) to the extent that they are

---

[6] The denial letter is signed by the "Facility Administrator." Whether this individual serves as the warden of CI North Lake is unclear. However, given that Alzate Marin identifies this letter as the response from the warden, the Court will construe the letter as the warden's denial of his request for a reduction. Even if Alzate Marin failed to exhaust his administrative remedies, the Court elects to analyze his arguments concerning "extraordinary and compelling reasons."

applicable, the court finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[7] 18 U.S.C. § 3532(c)(1)(A); *see United States v. Giron*, ___F.4th___, 2021 WL 4771621, at *3 (11th Cir. Oct. 13, 2021) (identifying with brackets the three findings needed under § 3582(c)(1)(A) for compassionate release).

Thus, Alzate Marin must demonstrate that "extraordinary and compelling reasons" warrant his requested reduction. The application notes for Section 1B1.13—a policy statement from the Sentencing Commission concerning § 3582(c)(1)(A)—specify "four general categories of extraordinary and compelling reasons: medical, age, family, and a catch-all other reasons category." *Giron*, 2021 WL 4771621, at *1 (internal quotation marks omitted) (citing *United States v. Bryant*, 996 F.3d 1243, 1249–50 (11th Cir. 2021)). Section 1B.13 is an applicable policy statement governing all motions filed—not only those filed by the Director of the BOP—under § 3582(c)(1)(A). *Bryant*, 996 F.3d at 1262. As such, a district court may not reduce a sentence under § 3582(c)(1)(A), unless a reduction is consistent with 1B1.13. *Id.* If the court finds that an extraordinary and compelling reason exists, "it must also determine that '[t]he

---

[7] Another basis for modifying a term of imprisonment is where "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imposed, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)." 18 U.S.C. § 3532(c)(1)(A)(ii). Here, Alzate Marin is 57 years-old, and he has not served at least 30 years of incarceration. Therefore, this statutory avenue is unavailable to him.

defendant is not a danger to the safety of any other person or to the community' before granting compassionate release." *Giron*, 2021 WL 4771621, at *1 (quoting U.S.S.G. § 1B1.13(2)).

> 1. *Alzate Marin's Medical Conditions*

Alzate Marin's medical conditions do not qualify as an extraordinary and compelling reason for his requested reduction. The application notes for "Medical Condition of the Defendant" under § 1B1.13 provide, in relevant part, that a defendant's medical condition may provide an extraordinary and compelling reason to support a reduction in sentence when the defendant: (1) suffers "from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)"; (2) suffers "from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (3) suffers "from a serious functional or cognitive impairment" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or (4) experiences "deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

Stable, controlled medical conditions do not qualify as an extraordinary and compelling reason for a prisoner's compassionate release under § 1B1.13. *See United*

*States v. Wedgeworth*, 837 F. App'x 738, 739–40 (11th Cir. 2020) (affirming the district court's finding of no extraordinary and compelling reason for a defendant suffering from obesity and chronic hypertension because those conditions were not terminal and did not substantially limit the prisoner's ability to provide self-care); *United States v. Alexander*, No. 3:17-cr-212-MMH-JBT, 2020 WL 7490088, at *2 (M.D. Fla. Dec. 21, 2020) (denying a defendant's motion for compassionate release where the defendant, who suffered from diabetes, high blood pressure, and "mental problems," acknowledged that he was prescribed medication to manage those conditions and no evidence demonstrated that his conditions posed a risk of death or grave harm or otherwise impaired his ability to provide self-care in the prison).

Here, Alzate Marin represents that he suffers from type 2 diabetes, high cholesterol, facial paralysis, facial nerve disorder, hyperlipidemia, blepharospasm, pterygium, Bell's palsy, hypothyroidism, tuberculin, and high blood pressure. His provided medical records indicate that he was diagnosed with: blepharospasm; pterygium; an unspecified facial nerve disorder; Bell's palsy; "unspecified acquired hypothyroidism"; "diabetes mellitus without mention of complication, Type II or unspecified type, not stated as uncontrolled"; and mixed hyperlipidemia. Doc. S-103-1 at 15; Doc. 106 at 10. He also provides records indicating blood pressure readings ranging from 129/80 to 140/90 over the course of several months. Doc. S-103-1 at 18; Doc. 106 at 12. The provided records also indicate that he has received various medications. Doc. S-103-1 at 13–15; Doc. 106 at 8–10, 16.

However, although he suffers from several medical conditions, no evidence shows that his medical conditions constitute terminal illnesses, such as serious or advanced illnesses with end-of-life trajectories. Similarly, no evidence shows that he suffers from a serious physical or medical condition, or a serious functional or cognitive impairment, that substantially diminishes his ability to provide self-care within the environment of CI North Lake and from which he is not expected to recover. Nor does any evidence indicate that he experiences deteriorating mental or physical health due to the aging process that substantially diminishes his ability to provide self-care at CI North Lake and from which he is not expected to recover. The warden's denial letter indicates that Alzate Marin is in "stable" care. Doc. 106 at 22. Although Alzate Marin points to high blood pressure readings, subsequent blood pressure readings from June and July of 2020 indicate less elevated, more normal levels. *Id.* at 12. Lab results describe his lungs as "clear and well inflated" and state that "[t]he heart and mediastinum are normal." *Id.* at 17; *see* Doc. S-103-1 at 30. For all of these reasons, Alzate Marin fails to establish that his medical conditions qualify as an extraordinary and compelling reason for his requested reduction.

    2. *Alzate Marin's Age*

Alzate Marin asks the Court to consider his "Age[] Group" in the Amended Motion. Doc. 103 at 1. His other filings refer to his age in arguing that "extraordinary and compelling reasons" exist for his requested reduction, too. *E.g.*, Doc. 105 at 2. According to § 1B1.13, the "Age of the Defendant" qualifies as an extraordinary and compelling reason to support a sentence reduction where the defendant: "(i) is at least

12

65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). Here, Alzate Marin is only 57-years-old. Thus, his age does not qualify as an extraordinary and compelling reason.

### 3. Remaining Reasons

Alzate Marin offers other reasons for his requested reduction, none of which fall under the "age," "family," or "medical" categories of "extraordinary and compelling reasons." As such, the Court turns to the "catch-all" category. Even when considered independently from, or in combination with, the grounds discussed above, Alzate Marin fails to demonstrate "extraordinary and compelling reasons" for a reduction under this category.

The fourth category, described as a "catch-all" provision, applies when, "[*a*]*s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, cmt. n.1(D) (emphasis added). "This language preclude[s] district courts from finding extraordinary and compelling reasons within the catch-all provision beyond those specified by the Sentencing Commission in Section 1B1.13." *Giron*, 2021 WL 2021 WL 4771621, at *2 (citing *Bryant*, 996 F.3d at 1263–65). Indeed, the Sentencing Reform Act "did not put district courts in charge of determining what would qualify as extraordinary and compelling reasons that might justify reducing a prisoner's sentence." *Bryant*, 996 F.3d

13

at 1249. Thus, courts lack the freedom to define "extraordinary and compelling reasons." *Id.* at 1264.

Alzate Marin's argument that conditions at CI North Lake warrant his release is unavailing. While two inmates at CI North Lake died from COVID-19, no inmates have currently tested positive, and 123 inmates have recovered from COVID-19. Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Nov. 4, 2021). Further, Alzate Marin does not point to any determination by the Director of the BOP that the conditions at CI North Lake constitute "extraordinary and compelling reasons" under the catch-all provision. For the same reason, Alzate Marin's discussion of conditions at other prisons is unavailing. And to the extent that he contends that his underlying medical conditions present a higher risk of fatality if he contracts COVID-19, he fails to point to any determination by the Director of the BOP that a greater risk of fatality upon possible contraction constitutes an extraordinary and compelling reason. No other offered reason warrants relief under this "catch-all" provision.

Therefore, Alzate Marin fails to demonstrate "extraordinary and compelling reasons" for his requested reduction.

## IV. CONCLUSION

Alzate Marin exhausted his administrative remedies, but he fails to demonstrate "extraordinary and compelling reasons" for his requested reduction. Because he fails to establish "extraordinary and compelling reasons" for his requested reduction, the Court need not analyze the § 3553(a) factors. *Giron*, 2021 WL 4771621, at *3 ("When

denying a request for compassionate release, a district court need not analyze the § 3553(a) factors if it finds either that no extraordinary and compelling reason exists or that the defendant is a danger to the public."); *see Bryant*, 996 F.3d at 1254 ("So to apply 1B1.13, a court simply considers a defendant's specific circumstances, decides if he is dangerous, and determines if the circumstances meet any of the four reasons that could make him eligible for a reduction. If he is dangerous or if his circumstances do not match any of the four categories, then he is ineligible for a reduction. If he is not dangerous and his circumstances fit into an approved category, then he is eligible, and the court moves on to consider the Section 3553(a) factors in evaluating whether a reduction should be granted.").

Finally, to the extent that Alzate Marin asks for home confinement, the Court denies that request. Generally, once a court imposes a sentence, the BOP is solely responsible for determining an inmate's place of incarcerate to serve that sentence. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can recommend that the BOP place an offender in a particular facility or program . . . . [b]ut decisionmaking authority rests with the BOP."); 18 U.S.C. §3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . . ."); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). Thus, to the extent that he seeks home confinement, the Court denies that request.

Accordingly, it is hereby **ORDERED**:

15

1. Defendant Reberto Alzate Marin's Amended Emergency Motion for Compassionate Release to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 103) is **DENIED**.

2. Defendant Reberto Alzate Marin's Motion for Compassionate Release under Section 603 of the First Step Act and § 3582(c)(1)(A) and 1B1.13 (Doc. 101) is **DENIED AS MOOT**.

**DONE AND ORDERED** in Tampa, Florida on November 5, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any